FILED

2009 Jun-09  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **LORINE J. MURRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:08-1141-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Lorine J. Murray (hereinafter "Ms. Murray") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Supplemental Security Income ("SSI")[1] benefits. Ms. Murray timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

42 U.S.C. § 405(g)[2] of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Murray was a 51-year-old female at the time of her hearing before administrative law judge (hereinafter "ALJ"). (Tr. 286). She has an eighth grade education. (Tr. 287). Ms. Murray's past work experiences include employment as an automotive detailer and a bartender. (Tr. 20, 291). Ms. Murray claims she became disabled beginning on January 1, 2005, due to mild depression with an adjustive disorder with depressed mood, back pain status post laminectomy and discetomy at L4/L5, headaches and mild fecal incontinence with a history of hysterectomy and oophorectomy.[3] (Tr. 16). She has not engaged in substantial gainful activity ("SGA") since January 1, 2005. (Tr. 16).

Ms. Murray filed her application for a period of disability and ("SSI") on January 5, 2005. (Tr. 14). The claim was denied by notice dated March 30, 2005. (Tr. 30-31). Ms. Murray filed a timely written request for a hearing on or around April 21, 2005. (Tr. 32). The hearing was held on June 13, 2006. (Tr. 29). The ALJ concluded that Ms. Murray was not disabled and denied her application on August

---

[2] 42 U.S.C. §1383(c)(3) renders the judicial review provisions of 42 U.S.C. §405(g) fully applicable to claims for SSI.

[3] Oophorectomy is surgical removal of the ovaries, the part of a woman's reproductive system that stores and releases eggs for fertilization and produces female sex hormones. *New Webster's Dictionary and Thesaurus & Medical Dictionary* 939, 941 (1991).

16, 2006. (Tr. 14). On February 23, 2008, the Appeals Council denied Ms. Murray's timely request for review, making the decision of the ALJ stand as the final decision of the Commissioner. (Tr. 5).

Ms. Murray filed a Complaint on June 26, 2008, which asks this Court to review the ALJ's decision. (Doc. #9). This Court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This Court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

3

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through April 10, 2009.

4

(4)    whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Murray had not engaged in SGA since January 1, 2005, her alleged onset date.  (Tr. 16).  He also found that Ms. Murray's impairments of mild depression with an adjustment disorder with depressed mood, back pain status post laminectomy and discetomy at L4/L5, headaches and mild fecal incontinence with a history of hysterectomy and oophorectomy constitute "severe" impairments when considered within the meaning of 20 C.F.R. § 416.920(c).  (Tr. 16).  The ALJ

further determined that the medically determinable impairments, both individually and in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations.  (Tr. 18).  The ALJ next concluded that Ms. Murray retains the residual functional capacity to perform a limited range of light exertional work.[5]  *Id*.  The ALJ also determined that Ms. Murray is unable to perform any past relevant work. (Tr. 20).

The vocational expert ("VE") testified that Ms. Murray's work experience is characterized by the Dictionary of Occupational Titles[6] as  "light" in exertional level and "semi-skilled."  (Tr. 302).  The VE further testified that the job of automobile detailer is classified as "medium"[7] in exertional level and "unskilled" as performed. (Tr. 302).  The ALJ then posed hypothetical questions to the VE regarding Ms. Murray's age, education, past relevant work, and her residual functional capacity of light exertion work with certain restrictions and limitations.  (Tr. 303).  The restrictions and limitations included that Ms. Murray not work at unprotected heights

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[6] The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for medium work.  (Washington, D.C.: U.S. Dept. of Labor, Employment and Training Administration: U.S. G.P.O., 1993).  Available online at: http://www.occupationalinfo.org.

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

or around dangerous moving machinery. *Id*. Further, the ALJ stated that Ms. Murray would need a sit/stand option and has mild restrictions in activities of daily living. *Id*. Based on the factors outlined above and Ms. Murray's residual functional capacity, the VE testified that there are jobs that exist in significant numbers in the national economy that Ms. Murray can perform. (Tr. 305). Specifically, these jobs are an assembler, gate guard, and ticket taker at the light exertional level. *Id*.

In reliance on the medical and other evidence, and in consideration of the VE's testimony, the ALJ concluded that Ms. Murray was not under a "disability" as defined by the Social Security Act, at any time from January 5, 2005, through the date of the ALJ's decision and therefore was not eligible for SSI as defined in the Social Security Act. (Tr. 22 (citing 20 C.F.R. § 416.920(g))).

## ANALYSIS

The court can reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[8]  On appeal, Ms. Murray requests this Court to reverse the ALJ's finding of no disability and to remand her case for further proceedings, including an additional hearing to determine disability status.  (Doc. #9 at 20).  In making this request, Ms. Murray asserts that the "ALJ erred by improperly finding that Ms. Murray's fecal incontinence condition was improved and that her headaches and neck issues were not severe impairments and only minimally impacted her ability to work; and, the ALJ erred by discrediting the only medical opinion to functional capacity." (Doc. #11 at 2,5,7).  Further, Ms. Murray contends that the Appeals Council erred by failing to remand her case based on new material evidence. (Doc. #11 at 9). In its review, the Court finds that the ALJ applied the correct legal standards to Ms. Murray's claim and that the ALJ's decision of no disability was supported by substantial evidence.  The Court further finds that the Appeals Council properly considered the new evidence and that such evidence was not material.

## I.    The ALJ  Properly Evaluated Ms. Murray's Fecal Incontinence.

Ms. Murray argues that the ALJ failed to correctly assess her fecal incontinence condition.  (Doc. #11 at 2).  In determining whether a claimant has met her burden of proving that she is disabled, the Commissioner is charged with the duty to weigh the

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986); *Watson v. Heckler,* 738 F. 2d 1169, 1172 (11th Cir. 1984). In this case, the ALJ afforded Dr. Gerten's and Ms. Murray's description of her condition proper weight since they were inconsistent with each other. Further, the ALJ properly assessed the impact of Ms. Murray's fecal incontinence on her residual functioning capacity. (Tr.19-20).

Ms. Murray's central argument for remand is based on the holding in *Vega v. Commissioner of Social Security.* 265 F.3d 1214 (11th Cir. 2001). In that case, the Eleventh Circuit court held that "remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Id.* at 1219 (citing *Marbury v. Sullivan* 957 F.2d 837, 839-42 (11th Cir. 1992)). Further, in *Vega,* the ALJ completely ignored the symptoms and diagnosis as well as other subjective complaints regarding the symptoms related to the condition and therefore the court determined the ALJ failed to conduct a meaningful analysis of the impact of the condition on the plaintiff's ability to work. *See id.* at 1220.

Ms. Murray argues that the ALJ failed to properly consider her fecal incontinence condition despite diagnosis by Dr. Gerten. (Doc. #9 at 8-9). Contrary to Ms. Murray's argument, the standard set forth in *Vega* is met by the ALJ in this case. *Vega,* 265 F.3d at 1219. Unlike *Vega,* in the present case the ALJ did find that

9

Ms. Murray suffered from fecal incontinence and that the medical evidence provided supported such diagnosis. (Tr. 20). Further, distinguishable from *Vega*, the ALJ acknowledged the fecal incontinency in his evaluation and explained why he felt the "condition could be controlled with treatment," as was demonstrated by the evidence on record. (Tr. 20).

In addition, the ALJ properly reached the conclusion to give little weight to Ms. Murray's subjective complaints about her fecal incontinence since, by reviewing all the medical evidence found in both Dr. Gerten and Dr. Morrow's records, he complied with the standard set forth in *Vega*. *Id.*; (Tr. 17, 19, 20). The ALJ considered Ms. Murray's own subjective allegations which he found not totally credible in terms of intensity, persistence, and limiting effects. (Tr. 19). Further, Ms. Murray indicated on March 11, 2006, to Dr. Gerten that her fecal incontinence had "improved with no fecal staining on her underwear although she felt she wasn't completely evacuating her bowels." (Tr. 260). Moreover, Ms. Murray also stated that she failed to comply with the treating physician's recommendations religiously. *Id.* Accordingly, the ALJ properly considered Ms. Murray's non-compliance with the prescribed medical treatment when assessing her overall credibility. (Tr. 20). 20 C.F.R. §416.929(c)(2) & (3). Lastly, Dr. Gerten gave no indication that this condition was severe enough to result in Ms. Murray being disabled nor that it was as severe

as she alleges.  Therefore, the ALJ properly gave only limited weight to Ms. Murray's subjective allegations since they was not consistent with Dr. Gerten's opinion and conflicted with other evidence in the record.

Further, although the ALJ partially discredited Ms. Murray's veracity, he did give some weight to Ms. Murray's subjective testimony since he determined her residual functional capacity to be lower than the opinion of the state agency medical consultants.  Specifically, the ALJ examined the report of the state agency medical consultants and discounted their finding that Ms. Murray could perform work at the medium level and instead determined that Ms. Murray could only perform a limited range of light work. (Tr. 20).

Since the ALJ properly considered the length and extent of the fecal incontinence, treatments, alleviations and consistency in the records of Dr. Gerten and Dr. Morrow, this Court finds substantial evidence within the record that Ms. Murray's fecal incontinence does not render her disabled and therefore affirms the ALJ's decision as to this issue on appeal.

## II.    The ALJ Properly Evaluated Ms. Murray's Headaches and Neck Pain.

In regard to Ms. Murray's headaches and neck pain, the ALJ found that the condition "is an impairment which is not severe" within the meaning of 20 C.F.R. §§ 416.920(c) and 416.921, as Ms. Murray failed to prove that "her history of headaches

and neck pain" sufficiently interfered with "her ability to perform basic work activities." (Tr. 19).  The Eleventh Circuit has clarified the analysis of step two (2) in the five step process:  "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031.  Under this analysis, Ms. Murray must merely "show that the impairment is not so slight and its effect is not so minimal." *Id.*  However, Ms. Murray was unable to meet this burden.  Nowhere in the record does the evidence suggest that Ms. Murray's headaches and neck pain disorder significantly interferes with her ability to perform basic work activities or that the effects are more than minimal.  Further, the ALJ gave a thorough discussion of Ms. Murray's disorder and specified appropriate reasons for discrediting such complaints. (Tr. 19). Specifically, the ALJ referenced her treatment at an emergency facility which reported that both Ms. Murray's head CT and spinal tap were normal.  (Tr. 276).  Moreover, the ALJ took note that "recent evidence" shows an increase in occurrence of neck pains and headaches and current evaluation by a specialist despite Ms. Murray's nearly contemporaneous statements to other treating physicians that she was "feeling well and her appetite was good." (Tr. 19).  Further, the ALJ pointed out that Ms. Murray saw her treating physician in September and October of 2006 and made no complaints

about headaches or neck pain with her primary pain complaint being her back.  (Tr.

280, 282).   Therefore, this Court affirms the decision of the ALJ and finds that

substantial evidence supports his conclusion that Ms. Murray's headaches and neck

pain disorder is not a severe impairment.

III.   **The ALJ gave Appropriate Consideration to the Opinion of Ms.
Murray's Treating Physician and Substantial Evidence Supports the
ALJ's Determination that Ms. Murray Retains the Residual
Functioning Capacity to Perform a Range of Light Work.**

A.   **Dr. Morrow's Opinion**

Ms. Murray argues that the ALJ failed to articulate an adequate basis for

discounting Dr. Morrow's opinion on April 13, 2006, that she was "disabled"

according to the checkbox notation. (Tr. 20, 207).  In determining whether a claimant

has met her burden of proving that she is disabled, the Commissioner is charged with

the duty to weigh the evidence, resolve material conflicts in testimony, and determine

the case accordingly.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986);

*Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).   In this case, the ALJ

afforded Dr. Morrow's opinion proper weight since it was inconsistent with Ms.

Murray's medical history of treatment.  (Tr. 17, 20).

Ms. Murray's treating physician, Dr. Morrow, did indicate by a checkbox

notation on April 13, 2006, that Ms. Murray's post-surgical chronic severe back pain

would prevent her from working an eight-hour day.  (Tr. 207).  However, the ALJ

13

properly reasoned that Dr. Morrow did not provide any substantial evidence for his opinion. (Tr. 20). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998).

The weight afforded a physician's conclusions regarding a claimant depends upon the extent to which statements are supported by clinical or laboratory findings and are consistent with other evidence of record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). A doctor's opinion should be given controlling weight only if it is consistent "with other substantial evidence in [Plaintiff's] case record. . . ." 20 C.F.R. § 404.1527(d)(2). "Generally, the more consistent an opinion is with the record as a whole, the more weight [that opinion shall be accorded]." 20 C.F.R. § 404.1527(d)(4). The Regulations provide that the supportability of a physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and the degree to which the opinion is internally consistent and consistent with other evidence. *See* 20 C.F.R. § 416.1527(a), (b), (c)(2), and (d)(3)-(4).

The opinion of a treating physician as to the plaintiff's condition and the

medical consequences thereof is entitled to deference, absent good cause. *See* 20
C.F.R. §§ 404.1527, 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th
Cir. 1997). Good cause exists where the treating physician's opinion is "not bolstered
by the evidence", where the "evidence support[s] a contrary finding", or where the
"opinion was conclusory or inconsistent with the doctor's own medical records."
*Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

In this case, the ALJ properly took into consideration the assessment of Ms.
Murray's ability to work an eight-hour day by Dr. Morrow and gave it minimal
weight. (Tr. 20). The ALJ reasoned that Dr. Morrow's opinion is "inconsistent with
the preponderance of the medical evidence of record." (Tr. 20). Further, the ALJ
explained that Dr. Morrow's treatment records with minor exception pertain to the
claimant's status prior to surgery in November 2005. (Tr. 20). Moreover, the ALJ
specifically stated that the "medical findings to support it are lacking and it is
concluded that it was merely done to support her application and does not reflect the
claimant's actual condition based on any medically determinable impairment." (Tr.
20).

In addition, as the ALJ explained, the evidence in the record from Ms.
Murray's treatment notes contradicts her complaints of severe back pain. More
specifically,  the treatment notes from Riverbend Center for Mental Health and Dr.

15

Morrow's clinic reflect that  Ms. Murray asserted over a consecutive five month period beginning in November 2005 through March 2006 various statements to the effect that "back surgery improved my life significantly" and that she was "feeling much better after back surgery."  (Tr. 215, 217, 220, 222).

Therefore, based upon the inadequate explanations and contradictions about Ms. Murray's back pain, disability, ability to work, including those found within the totality of Dr. Morrow's and Riverbed Center for Mental Health's medical records, the ALJ had substantial evidence to properly discount Dr. Morrow's April 2006 opinion concerning Ms. Murray's inability to work.  (Tr. 207).

**B.** **The Social Security Administration Determination**

Ms. Murray also argues that ALJ's decision mistakenly relied on the opinion of claims analyst Karen Foster and that no state agency physician signed the assessment.  (Doc. #11 at 8).  In addition, Ms. Murray asserts that the ALJ improperly described Karen Foster as a "state agency medical consultant" and that she is not an acceptable medical source.  *Id.*

The ALJ did not incorrectly describe Karen Foster as he made no reference to her specifically in his decision.  Moreover, contrary to Ms. Murray's argument, the Social Security Administration Disability Determination assessment was signed by a state agency physician, Dr. H. Gordon Mitchell.  (Tr. 30 at box 32).  Additionally,

according to 20 C.F.R.§ 416.1016(a), "[a] medical consultant is a person who is a member of a team that makes disability determinations in a State agency, . . . or who is a member of a team that makes disability determinations for [the Social Security Administration] when we make disability determinations ourselves." Therefore, the ALJ properly described the State agency medical consultant in reference to Dr. H. Gordon Mitchell. (Tr. 30 at box 32). Further, as the Social Security Administration Disability Determination report was co-signed by Dr. H. Gordon Mitchell, an acceptable medical source according to 20 C.F.R.§ 416.1016(b), the ALJ decision as to residual functioning capacity was not speculative and was based on substantial evidence.

In addition, as noted earlier in this opinion, the ALJ examined the report of the State agency medical consultant and did not completely rely on her determination of Ms. Murray's residual functioning capacity. Instead, the ALJ discounted the State agency medical consultant's findings that Ms. Murray could perform work at the medium level and instead determined she could only perform a limited range of light work. (Tr. 20). In doing so, the ALJ properly assessed Ms. Murray's residual functional abilities.

IV.   **Additional Evidence Submitted to the Appeals Council does not Warrant Remand for Further Administrative Consideration.**

Ms. Murray finally asserts that the additional evidence from Dr. Morrow's updated progress notes submitted to the Appeals Council warrants remand for further administrative consideration. (Doc. #9 at 19-20).  The Appeals Council denied Ms. Murray's request for review after considering the evidence in question because the Council found that such evidence did not provide a basis for changing the ALJ's decision. (Tr. 5-6). This Court agrees that the new evidence does not satisfy the criteria for remand set forth in 42 U.S.C. § 405(g).

When a claimant requests review of an ALJ's decision, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an [ALJ]." 20 C.F.R. § 404.967 (2006).  The Commissioner's regulations obligate the Appeals Council to consider any new and "material" evidence.  20 C.F.R. § 404.970(b) (2006).  "Material" evidence that the Appeals Council is required to consider is evidence that relates to the period on or before the date of the ALJ's decision and that is, therefore, time-relevant. 20 C.F.R. §§ 404.970(b), 404.976(b)(1) (2006).  Even if the evidence is new and time-relevant, the Appeals Council will only grant a request for review of such evidence if, when considered in conjunction with the evidence before the ALJ, the new evidence indicates that the ALJ's actions, findings, or conclusions are contrary to the law.  *See*

18

20 C.F.R. § 404.970(b) (2006).

In this case, the Appeals Council complied with the requirements of 404.970(b) in denying Ms. Murray's request for review. The Appeals Council considered the additional evidence submitted by Ms. Murray but "found that this information does not provide a basis for changing the ALJ's decision." (Tr. 5-6). Therefore, the Appeals Council properly refused to remand to the ALJ.

In *Falge v. Apfel*, 150 F.3d 1320, 1132 (11th Cir. 1998), the Eleventh Circuit discussed two avenues for court review of new evidence first submitted to the Appeals Council. First, such evidence can be considered by a court for purposes of remand pursuant to 42 U.S.C. § 405(g). *See Falge*, 150 F.3d at 1323-24. Second, if the Appeals Council refuses to consider "new and material" evidence, such a refusal amounts to an error of law under 20 C.F.R. § 404.970(b), which may be reviewed by the court. *See id.* at 1324 (quoting *Keeton v. Dept. of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Since the Appeals Council did not refuse to review the evidence, but specifically stated that the evidence was considered but provided no basis for changing the ALJ's decision, this Court must review the new evidence under 42 U.S.C. § 405(g).

The new evidence at issue here is comprised of updated progress notes made by Dr. Morrow after Ms. Murray's hearing with the ALJ. (Tr. 280, 282). The

additional evidence reflects the same diagnosis and the same symptoms as the evidence before the ALJ and does not reveal any significantly different limitations or restrictions that would affect the ALJ's findings as to Ms. Murray's residual functional capacity.

To elaborate, in evaluating this evidence this Court must follow the standard set forth under *Ingram v. Commissioner of Social Security* that, when a plaintiff submits additional evidence to the Appeals Council and further argues to the court that the Appeals Council erred in denying review, the court must determine whether the decision of the ALJ was supported by substantial evidence as a whole on the record. *See Ingram,* 496 F. 3d 1253, 1262, 1266 (11th Cir. 2007). Under this remand standard, Ms. Murray's arguments are not convincing because the additional evidence is cumulative and further supports the substantial evidence of the record as a whole. The ALJ stated in his decision that "the claimant did undergo surgery, but has made an objectively good recovery with the exception of some residual back pain." (Tr. 20). The statement by the ALJ is supported by comments made by Ms. Murray to various doctors that were documented in their treatment notes of her. Further, Dr. Morrow's progress notes of January 2006, March 2006, and April 2006, state essentially the same thing - Ms. Murray complains of residual back pain. (Tr. 248, 249, 250). The additional progress notes of September 2006, and October 2006,

are similar in their description of Ms. Murray's residual back pain and do not add anything of substance. (Tr. 280, 282). Further, no underlying evidence of any new tests or examinations of Ms. Murray was submitted as part of the progress notes. *Id.*

Therefore, this Court finds that the Appeals Council did not err in refusing to remand this case for further administrative consideration because the decision of the ALJ was supported by substantial evidence on the record as a whole.

## CONCLUSION

Upon review of this matter there is substantial evidence to support the ALJ's decision. Accordingly, the ALJ's decision is due to be **AFFIRMED**.

**DONE** and **ORDERED** this the 9th day of June, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

21